# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNY FERGUSON, now by marriage JENNY GALLAGHER, <br><br> Plaintiff, <br><br> v. <br><br> THE COMMONWEALTH OF PENNSYLVANIA, BUREAU OF STATE POLICE and PENNSYLVANIA STATE POLICE OFFICER CORPORAL ROBERT KROL, <br><br> Defendants. | Civil Action No. 05-280E |

## OPINION

COHILL, D.J.

Plaintiff Jenny Ferguson Gallagher ("Gallagher") has filed claims alleging excessive use of force against the Commonwealth of Pennsylvania and its Bureau of State Police ("PSP"), and Pennsylvania State Police Officer Robert Krol, for violations of 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and Article 1, §§ 1, 8, 9, and 13 of the Constitution of the Commonwealth of Pennsylvania. She also alleges negligence.

Presently pending before the Court is Defendants' motion for summary judgment (Doc. 35) pursuant to Fed.R.Civ.P. 56(c) with supporting brief, and Plaintiff's response in opposition.

We have jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331. We have supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims.

Having now considered the submissions of the parties and the applicable law, for the reasons set forth below we will grant in part and deny in part Defendants' motion.

## Background[1]

On September 30, 2003, Jenny Gallagher was a passenger in a pick-up truck being driven by her then-boyfriend and now husband, Richard Gallagher, in Crawford County, Pennsylvania. The truck had been parked for a period of time on the side of Shadeland Road in the middle of the night. While the Gallaghers were away, Pennsylvania State Police (then-Trooper) Corporal Robert Krol drove his marked cruiser along Shadeland Road. In the car with him was former defendant Trooper Shawn Massey, whom plaintiff has voluntarily dismissed from this action. It was approximately 2:00 a.m. The troopers saw the truck and stopped to investigate. Krol shone a flashlight into the truck's cab to see if anyone was present; no one was in the passenger cab. He next shined his flashlight into the bed of the pickup truck. He saw a quantity of marijuana plants that were sticking out from underneath a tarp in the bed of the vehicle. Krol returned to his cruiser and drove it down the road about 3/10 of a mile away so as to observe the pickup. Trooper Krol contacted the PSP communication desk and notified another PSP cruiser in the area as to what was occurring. Trooper Krol "ran the plates" and learned that there was no active warrant attached to the license plate number.

Carrying flashlights, the Gallaghers walked out of the nearby woods, got into the truck and drove off. Trooper Krol began to follow, at first with his lights off, but then with the headlights on. As soon as the cruiser's headlights came on, the Gallagher's truck sped up. Krol alleges that he attempted to get the truck to pull over. According to Krol, he activated the car's siren and overhead red and blue lights at the start of the pursuit. Jenny Ferguson testified that she did not see the police lights or hear any sirens until much later, when she was out of the pickup truck. Richard Gallagher fled. At some point in time a second state police cruiser joined in on the chase, following Krol's cruiser. The chase approached 90 miles per hour on the gravel road.

Jenny Gallagher testified in her deposition that at the time the pursuit began, she had no idea that Richard Gallagher was transporting marijuana in the back of the pickup. Richard

---

[1]The material facts which are in dispute will be noted as such.

2

Gallagher told her that he thought the police were behind them. She insisted that Richard Gallagher let her out of the vehicle. He slowed to nearly a stop at a "T" intersection of Shadeland and Stateline roads and allowed the Plaintiff to exit the vehicle. According to Jenny Gallagher, Richard Gallagher brought the truck to a complete stop; she recalls that his right front tire slid into the ditch and that after dropping her off, he put his truck in reverse to get his wheel out of the ditch. Richard Gallagher then turned left onto Stateline Road, sped off, and continued his efforts to avoid the police, leaving Gallagher standing on the road. Again, there is a dispute of fact between the parties as to when Krol activated his police lights or siren; before or after plaintiff had exited the vehicle.

Jenny Gallagher made no effort to evade or escape the police, but waited on the road. While she was standing there, Krol approached her with the patrol car. She contends that she saw the police lights on the patrol car just before it struck her. Krol drove directly into her. There is a dispute as to whether or not Krol intentionally struck her with his patrol vehicle, and whether he braked or slowed in an effort to avoid impact.

Gallagher was thrown under the right front bumper of the police vehicle, and suffered bruises, contusions and sprains. After Gallagher was struck by the vehicle, Massey immediately arrested her. There is a dispute as to whether or not Krol or any officer that night asked if she required medical attention. Her injuries included bruising along her left side, scrapes along her left back, shoulder, and legs; numbness in her left leg from the knee down. According to Gallagher, she also suffered trauma to her lower intestine which appears to have been diagnosed as a necrotic small-bowel obstruction. There is a factual and legal dispute as to whether the patrol car caused the bowel injury. Gallagher also alleges emotional and psychological trauma as a result of the incident.

Richard Gallagher was apprehended minutes later after he wrecked his truck. Jenny Gallagher spent thirty-three days in jail.

According to Jenny Gallagher, some months later she was speaking with Corporal Krol at

3

the Crawford County Courthouse during her husband's drug trial. Krol admitted to her that he was the trooper driving the car that hit her, and said that on the night of the incident, she "looked like a deer in the headlights." Apparently Gallagher then accused him of hitting her on purpose to which Krol responded, "It was an accident." (According to Gallagher, a reasonable person could infer: 1) that Krol intended to strike her; 2) that Krol found a certain degree of humor in having done so; and 3) Krol felt comfortable enough to taunt her about the incident.)

Count One of the complaint alleges violations of 28 U.S.C. § 1983 against officer Krol his individual capacity. It further avers that his actions violated her right against unreasonable search and seizure under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, and under Article 1, §§ 1, 8, 9, and 13 of the Pennsylvania Constitution. Count Two alleges, in the alternative, that the Defendant's conduct constituted negligence, and that the Commonwealth and the PSP should be liable for the conduct of their employees under the theory of respondeat superior.

Defendants have now moved for summary judgment.

## Applicable Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. . . ." Id. at 586-87 (citations omitted).

On motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To defeat summary judgment,

4

the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. Id., quoting Fed. R. Civ. P. 56(e); see First Nat'l Bank of Pennsylvania v. Lincoln Nat'l Life Ins. Co., 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. See Anderson v. Liberty Lobby, 477 U.S. 242, 248-49 (1986).

**Analysis**

Plaintiff contends that the defendants' actions violated her 4th and 14th Amendment rights against unreasonable seizures because the police intentionally struck her with the patrol car, or, in the alternative, that striking her was grossly negligent and deliberately indifferent. Defendants find fault with her pleading different theories of liability in the alternative, but we find that plaintiff is entitled to do so. Fed. R. Civ. P. 8(d)(2).

### A. 4th Amendment

In order to prove a 4th Amendment violation for an unlawful seizure Plaintiff must prove that she was "seized." "[A] Fourth Amendment seizure [occurs] ... when there is a governmental termination of freedom of movement through means intentionally applied." Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007) (quoting Brower v. County of Inyo, 489 U.S. 593, 596-97(1989)("If ... the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.") Such claims that law enforcement officers have used excessive force in the course of an arrest should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." Graham v. Connor, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397; Mosley v. Wilson, 102 F.3d 85, 95 (3d Cir.1996). A court must judge the

5

reasonableness of particular force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The reasonableness of the officers' use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Police are permitted to use a reasonable amount of force to effect an arrest; the degree of force is dictated by the suspect's behavior. Id.

Defendants argue that when Krol hit plaintiff with the police cruiser, it was nothing more than an unfortunate accident brought about by her foolish decision to exit the vehicle during the course of a high speed chase; there was never any "seizure," according to the defendants. We find that when viewing the evidence in the light most favorable to the plaintiff, a genuine issue of material fact exists as to whether Krol intentionally struck plaintiff. She has testified that conditions were such that he could have seen her exiting the truck and standing on the road. His comments that she "looked like a deer in the headlights" could be interpreted by a factfinder as evidence of intentional conduct on his part. A reasonable factfinder, given the benefit of live testimony and the opportunity to weigh credibility and demeanor, could believe plaintiff's version of the story: that Krol knew Richard Gallagher had dropped Jennifer Gallagher off on the side of the road, Krol saw Richard Gallagher put the truck in reverse in order to remove the tire from the ditch, Krol saw her standing there and intentionally struck her with the car with excessive force as a way of detaining her and terminating her freedom of movement. We will therefore deny the motion for summary judgment as to plaintiff's 4th Amendment claim.

### B. 14th Amendment

Defendants argue that Plaintiff's Fourteenth Amendment claim is barred by the "explicit source rule" announced in Albright v. Oliver, 510 U.S. 266, 273 (1994). Defendant argues that, under Albright, Plaintiff cannot maintain a substantive due process claim under the Fourteenth Amendment, because her claim regarding the circumstances of her arrest properly falls under the

6

Fourth Amendment. Defs.' Br. (Doc. 36) at 10-11. In denying defendants' motion to dismiss, in which the defendants argued the identical point, we held:

> *Albright*, then, stands for the proposition that a § 1983 malicious prosecution claim cannot be based on substantive due process. It may, however, be based upon police misconduct "that violates the Fourth Amendment, the procedural due process clause or any other explicit text of the Constitution." *Torres v. McLaughlin*, 163, F.3d 169, 173 (3d Cir. 1998). The Third Circuit has specifically rejected an interpretation of *Albright* that permits a malicious prosecution claim only to be brought under the Fourth Amendment. *Id.*

Opinion and Order dated January 16, 2007 (Doc. 7) at 5. This is the law of the case. The complaint herein alternatively pleads that Krol's actions, if not intentional and therefore a violation of the 4th Amendment, were deliberately indifferent to Gallagher's substantive due process right to bodily integrity under the 14th Amendment.

Such substantive due process claims require that the plaintiff show that the action government officials took shocks the conscience of a reasonable observer. Phillips v. County of Allegheny, 515 F.3d 224, 246 (3d Cir. 2008). Defendants argue that in order to prove that the police officer's actions in the high speed chase shock one's conscience, she must show that the officer intended to hurt her; it is not enough to show that he acted recklessly or with indifference toward her. Fagen v. City of Vineland, 22 F.3d 1296 (3d Cir. 1994). When the police official in question could act in a more deliberate fashion, deliberate indifference might still be enough to trigger liability under the 14th amendment. Miller v. City of Philadelphia, 174 F.3d 368, 374-76 (3d Cir. 1999)

We find that when the evidence is considered in a light most favorable to plaintiff, there are genuine issues of material fact with respect to plaintiff's claim that 14th Amendment rights were violated. It is the intent to inflict force beyond that which is required by a legitimate law enforcement objective that shocks the conscience and gives rise to liability under § 1983 for injures arising out of a high speed chase. City of Sacramento v. Lewis, 523 U.S. 833 (1998). The jury should be able to consider the alleged violations of department regulations, along with evidence contradicting the officer's account of what happened, to the extent that they are relevant to the

7

officer's intent. Moreover, the jury could readily find that if not intentional, Krol's actions were deliberately indifferent to Gallagher's substantive due process right to bodily integrity and thus, a violation of her substantive due process rights. Krol arguably had time and reason enough to effectuate an arrest prior to instigating the chase that night when he saw marijuana plants in plain view and a suspect had been identified through the check on the license plate. If plaintiff's testimony is believed by the jury, and Krol elected instead to follow the pickup with his headlights on but no siren or flashing lights, it was foreseeable that Gallagher would flee and in so doing, put his passenger at risk. A reasonable factfinder could find that Krol engaged in an unnecessary car chase without adhering to certain policies relating to pursuits (which are in evidence), and thereby was deliberately indifferent to the health and safety of others. We will therefore deny defendant's motion for summary judgment with respect to the 14th Amendment claim.

### C. 5th Amendment

Defendants have also argued that plaintiff's claim that the defendants violated her rights under the due process clause of the 5th Amendment should fail because any claim that there was a deprivation of her liberty only apply to the federal government. <u>Shoemaker v. City of Lock haven</u>, 906 F.Supp. 230, 238 (E.D. Pa. 1995) ("Rights guaranteed by the Fifth Amendment are not incorporated into the Fourteenth where, as here, such rights, if they exist, can be asserted directly under the Fourteenth Amendment.") Plaintiff's Brief in opposition does not address this argument, and we are left to assume that she has abandoned her claim for violation of her Fifth Amendment rights. We will therefore grant the motion for summary judgment on this narrow issue.

### D. Pennsylvania Constitution

Count I of the complaint against the individual defendants alleges violations of Article I, §§ 1, 8, 19, and 13 of the Pennsylvania Constitution through 42 U.S.C. § 1983. Defendants argue that plaintiff's state constitutional claims fail because actions brought pursuant to § 1983 are only for violations of a federal right. <u>Gonzaga University v. Doe</u>, 536 U.S. 273 (2002). Defendants also

8

note that there is no right to monetary damages for violations of the Pennsylvania Constitution. Jones v. City of Philadelphia, 890 A.2d 1188 (Pa. Cmwlth. 2006), appeal denied, 909 A.2d 1291 (Pa. 2006). Again, we note that plaintiff has not set forth any argument in opposition, and we therefore assume that she has abandoned her claim for violation of her rights under the Pennsylvania Constitution. We will therefore grant the motion for summary judgment on this issue.

### E. Count II Negligence

Defendants argue that we should decline to exercise supplemental jurisdiction over plaintiff's pendant state law claim at Count II, negligence, as set forth in 28 U.S.C § 1367(c)(3). We have not dismissed the bulk of plaintiff's federal claims; even so, at this late juncture, after the parties have undergone discovery and filed briefs on dispositive motions, it would be unfair to the litigants and a waste of judicial resources to grant defendants' request. We will therefore continue to exercise supplemental jurisdiction over the negligence claim.

Defendants argue that Corporal Krol owed no duty to plaintiff, and therefore, there can be no action at common law sounding in negligence. Heritage Surveyors & Engineers, Inc. v. National Penn Bank, 801 A.2d 1248, 1252 (Pa. Super. 2002). Pennsylvania courts have held that state troopers do not owe a common law or statutory duty to fleeing motorists. Frazier v. Commonwealth of Pennsylvania, 845 A.2d 253, 260 (Pa. Cmwlth. 2004), citing Lindstrom v. City of Corry, 763 A.2d 394 (Pa. 2000) (no such duty owed by police officers).

In Lindstrom, a city police officer, who was in a patrol car, observed a motorist and decided to pull him over. When the motorist failed to pull over, the officer began to follow him. During the ensuing pursuit, the motorist lost control of his vehicle and was killed. The parents of the motorist sued the city, alleging its officer was negligent in initiating and continuing a high speed chase. The city moved for judgment on the pleadings raising a governmental immunity defense under the Tort Claims Act.

In considering whether the city and its officer owed the fleeing driver a common law duty, the Court examined five public policy factors. Specifically, the Court considered: (1) the

9

relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. Id. (citing Althaus v. Cohen, 562 Pa. 547, 756 A.2d 1166 (2000)). Applying these factors to determine whether to impose a common law duty upon "governmental agencies and their agents when a police officer pursues fleeing drivers," the Court stated:

> As to the first factor, regarding the relationship between the parties, a law enforcement officer is a protector of all members of the public. The officer's relationship to the fleeing suspect must be viewed in light of the broader relationship to the safety of the community he or she serves. Any duty of protection the officer has is lessened as soon as the driver flees rather than complying with a request to stop. The second factor weighs against imposing a duty, as the social utility of a police officer's attempt to apprehend a person suspected of violating the law is beyond dispute. Turning to the third factor, it is evident that there is a risk of injury to the fleeing driver, and it is foreseeable that drivers who refuse to pull over when alerted to do so may be injured in their attempt to elude an officer. Fourth, the consequences of imposing a duty upon officers are burdensome, as that may prevent the apprehension of dangerous criminals and further encourage flight. Finally, the public has a preeminent interest in ensuring that roadways remain safe from dangerous drivers and criminals and that police officers are empowered to enforce the law....

Id., 763 A.2d at 397. The Court held, "[o]n balance, these factors do not call for imposing a common law duty of care in these circumstances." Id. (citing Estate of Day v. Willis, 897 P.2d 78 (Alaska 1995)) (public policy does not support imposing a legal duty on officers to protect fleeing offenders from their own actions); Robinson v. City of Detroit, 462 Mich. 439, 613 N.W.2d 307 (2000) (police owe no duty to a wrongdoer, including fleeing driver).

Plaintiff argues that these cases are distinguishable in a number of ways. First, they involved efforts to stop motor vehicles already in transit, not a situation where pursuit was avoidable. It is plaintiff's theory that Krol decided that he "wanted a car chase that night" and the he could have avoided the car chase by simply arresting the Gallaghers before they started the truck. Plaintiff also argues that Frazier and Lindstrom involved injuries or death as a result of the drivers' own actions, not direct contact between their own vehicles and those operated by law enforcement. And third, plaintiff argues that neither case involves a claim from a passenger, let alone a stationary pedestrian.

10

In short, Gallagher asks that we find that Krol did not owe a duty to one occupant of the car, the driver, but he did owe a duty to the passenger. We find that under the circumstances of this case, in applying the Lindstrom factors, Krol owed no common law duty of care either to a fleeing driver or to the passenger (owner of the vehicle) therein. Regardless of whether Krol should have arrested the Gallaghers as soon as they walked out of the woods, or whether the cruiser lights were activated early on, the undisputed evidence is that at the time he began to drive away from the cruiser at a high rate of speed, Richard Gallagher believed he was being chased by law enforcement and he drove nearly 90 miles per hour in order to avoid arrest. It is undisputed that Krol believed that one -- if not both-- of the individuals in that truck was unlawfully possessing marijuana. The social utility of attempting to apprehend a person suspected of drug possession and/or distribution is obvious. As for the third factor, the nature of the risk imposed and foreseeability of the harm incurred, it was late at night in a rural area, with no other civilian vehicles or pedestrians in the area. The risk of injury to the driver and passenger resulting from an attempt to elude an officer may be foreseeable because the driver can crash the vehicle during such high speed chases (indeed, that is what happened here). However, a reasonable factfinder could not conclude that it would be foreseeable or remotely probable that a passenger would exit the vehicle in the middle of a high speed chase with the police behind the vehicle. Fourth, we find that the consequences of imposing a duty upon officers would be quite burdensome; should Krol know how to distinguish between people in the fleeing vehicle to whom he owed a duty and those to whom he did not? Such a requirement would be unworkable in the field of law enforcement. An officer could not make a distinction during the chase whether the occupants are willingly in the fleeing vehicle or whether they know about whatever evidence of criminality is in the vehicle. As for the final factor, the overall public interest in the proposed solution, the public has an interest in ensuring that such alleged criminals be apprehended and that the roadways remain safe. Even after Jenny Gallagher left the truck and stood on the road, she was not an innocent bystander, she was a suspect whose name appeared on the title to a truck that had marijuana plants in it. Should we impose a legal duty on Krol to protect this fleeing offender from her own actions in getting out of the truck in the

11

dark of night? Finally, as to plaintiff's argument that Krol was somehow "negligent" in not arresting the Gallaghers earlier, and that he "wanted a car chase that night" and should be held accountable for any injuries that resulted therefrom, she has not cited to any case in support of this novel legal proposition and, to the extent we are obligated to conduct such research on behalf of parties, we have found none. Nevertheless, on balance, the Lindstrom factors favor the defendants.

Insofar as we have ruled that there was no common law duty of care sufficient to support plaintiff's negligence claim, we need not address the argument that Krol and the Commonwealth are entitled to sovereign immunity. We note, however, that we previously denied the defendants' motion to dismiss and held that plaintiff's negligence claim falls under the vehicle liability exception to sovereign immunity found in 42 Pa. C.S.A. § 8522(b). Opinion and Order dated January 16, 2007 (doc. 7) at 5.

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment shall be granted in part and denied in part. An appropriate Order follows.

March 12, 2009
Date

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Judge